IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DARRON RAMPEY, | ) | CASE NO. 5:07 CV 152 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| JULIUS WILSON, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |

## Introduction

Before me by referral[1] is the *pro se* petition of Darron Rampey for a writ of habeas corpus under 28 U.S.C. § 2254.[2]  Rampey is currently incarcerated at the Richland Correctional Institution in Mansfield, Ohio, where he is serving an aggregated term of eight years in prison imposed in 2004 by the Stark County Court of Common Pleas after a jury found him guilty of two counts of possession of cocaine.[3]

In this petition, Rampey raises four grounds for habeas relief.[4]  The State, in its return of the writ, maintains that Rampey's claims are variously non-cognizable, waived, or without

---

[1] ECF # 4.  Subsequent to this referral, on March 22, 2007, the case was reassigned by non-document order to United States District Judge Sara Lioi.  That reassignment did not affect the referral.

[2] ECF # 1.

[3] *Id.* at 2.

[4] *Id.* at attachment.

merit.[5]  Although Rampey has attempted in his traverse to overcome the State's objections,[6]

for the reasons that follow, I will recommend finding that the State's contentions are

well-founded and, therefore, that this petition should be dismissed in part and denied in part.

## Facts

### A.      Underlying offense, trial and sentence

The state appeals court found the underlying facts of the offense and of the trial[7] to

be as follows:

> On March 28, 2003, Darnell Holmes, a confidential informant, told the
> police that he had set up a cocaine purchase from Rampey later that day at a
> VFW in Canton, Ohio.  Holmes had made a monitored phone call to Rampey
> saying that he was ready to meet.  He gave the police Rampey's name,
> described his vehicle, gave the vehicle's license plate  number, told them the
> amount of cocaine being sold, where the cocaine would be in Rampey's truck,
> and how the cocaine would be packaged.

> About fifteen minutes after the phone call, police officers saw Rampey
> approach the VFW in a vehicle matching Holmes's description.  They arrested
> Rampey after he exited the vehicle.  An officer then climbed into Rampey's
> truck and found packages of crack cocaine where Holmes said they would be,
> wrapped in the manner he described.

> Rampey was subsequently indicted on two counts of drug possession.
> On June 17, 2003, Rampey moved to suppress the cocaine found in his
> vehicle, arguing that both his warrantless search and the warrantless search of
> his vehicle were illegal.  After a hearing, the trial court denied that motion on
> June 22, 2003.

---

[5] ECF # 7.

[6] ECF # 8.

[7] Facts found by the state appeals court on its review of the record are presumed
correct by the federal habeas court. *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

The matter then proceeded to a jury trial.  During the course of that trial, the State played a tape of Holmes's phone conversation with Rampey over Rampey's objection.  At the conclusion of the trial, the jury found Rampey guilty on both counts and the trial court sentenced him accordingly.[8]

**B.      Direct appeal**

Rampey, now represented by different counsel than at trial, thereupon timely appealed from his conviction and sentence,[9] raising three assignments of error:

> 1.      The trial court abused its discretion by failing to suppress evidence seized in violation of the Ohio and United States Constitution.
>
> 2.      Appellant's conviction is against the manifest weight and sufficiency of the evidence.
>
> 3.      The trial court abused its discretion in admitting a tape recorded statement of a phone conversation without requiring the proper foundation for voice identification.[10]

The State filed a brief in opposition,[11] and the Ohio appeals court ultimately overruled each assignment of error, affirming the judgment of the trial court.[12]

Rampey, *pro se*, then timely filed a notice of appeal with the Supreme Court of Ohio,[13] presenting in his jurisdictional memorandum[14] the following four propositions of law:

---

[8] ECF # 7 at 77-78.

[9] *Id*. at 20-43.

[10] *Id*. at 21.

[11] *Id*. at 45-75.

[12] *Id*. at 76-91.

[13] *Id*. at 92-93.

[14] *Id*. at 94-109.

1.      Appellant was deprived of his protected federal Constitutional rights to due process of law and fundamental fairness when the trial court, and in abusing its discretion (sic), failed to suppress evidence seized in violation of the Fourth Amendment to the United States Constitution.

2.      Appellant was deprived of his constitutional rights to due process of law and fundamental fairness where his conviction was/is against the manifest weight of the evidence.

3.      The Admission of an improperly admitted telephone conversation, in the absence of a proper foundation, violated appellant's right to a fair trial and to due process of law.

4.      Appellant was deprived of his Sixth Amendment right to effective assistance of counsel "on appeal" as defined in *State v. Murnahan*.[15]

The State filed a brief opposing jurisdiction,[16] and the Ohio Supreme Court denied leave to appeal, dismissing the appeal as not involving a substantial constitutional question.[17] The record does not show that Rampey filed for a writ of certiorari from the Supreme Court of the United States.

**C.      Federal habeas petition**

Approximately six months after his appeal was dismissed by the Supreme Court of Ohio, Rampey, *pro se*, filed the present petition for federal habeas relief, asserting the following four grounds for relief:

1.      Conviction obtained in violation of the fourth Amendment prohibition against illegal searches and seizures.

---

[15] *Id*. at 95-96

[16] *Id*. at 130-47.

[17] *Id*. at 148.

-4-

2.    Conviction obtained in violation of the Federal Constitution's Sixth Amendment (fundamental fairness) and Fourteenth Amendment due process clause where the conviction is against the manifest weight and sufficiency of the credible and admissible evidence, thereby resulting in a trial and conviction that was/is fundamentally unfair.

3.    Conviction obtained in violation of the Sixth and Fourteenth Amendments to the United States Constitution where the 'clearly erroneous and improper' admission of a tape recorded telephone conversation, offered and admitted in the patent absence of a proper foundation, inherently implicated petitioner's right to a fundamentally fair trial and due process of law.

4.    Petitioner was deprived of his Sixth Amendment right to effective assistance of counsel on appeal as of right as defined and prescribed in and under *State v. Murnahan* and *Strickland v. Washington* where appellate counsel forwent obviously plain errors and clearly obvious and erroneous penalty phase errors in lieu of pursuing limited and arguably weaker ones, the effect of which implicated petitioner's right to the effective assistance of counsel.[18]

The State, in its return of writ,[19] initially argues that Rampey's first ground for relief, alleging that his conviction rested on evidence from an improper search, is not cognizable here[20] under the holding of the Supreme Court in *Stone v. Powell*,[21] which prohibits habeas claims on Fourth Amendment grounds where a state has provided a full and fair opportunity to litigate such claims.  Further, the state contends that the manifest weight of the evidence component of the second ground is also non-cognizable,[22] while the second portion

---

[18] ECF # 1, Memorandum in support at 11-21.

[19] ECF # 7.

[20] *Id*. at 5-6.

[21] *Stone v. Powell*, 428 U.S. 465 (1976).

[22] ECF # 7 at 8-9.

challenging the insufficiency of the evidence should be denied because the state appeals decision denying this aspect of the claim was not an unreasonable application of the clearly established federal law[23] of *Jackson v. Virginia*.[24]

The State also maintains, with respect to the third ground for relief, that Rampey waived his attack on the admission of the tape recording of his conversation with the informant by not fairly presenting it to the Ohio appeals court as a federal constitutional matter but only as a purported violation of the Ohio Rules of Evidence.[25]  Finally, the State asserts that Rampey's last ground for relief, alleging the ineffective assistance of appellate counsel for not raising *Blakely*[26] arguments concerning his sentence, is without merit.[27]

Although Rampey responded to the State's return of writ with a lengthy, densely-written traverse,[28] for the reasons that follow, I will recommend finding that the State's arguments are well-founded and that this petition should be dismissed in part and denied in part.

---

[23] *Id*. at 11-16.

[24] *Jackson v. Virginia*, 443 U.S. 307 (1979).

[25] ECF # 7 at 16-20.

[26] *Blakely v. Washington*, 542 U.S. 296 (2004).

[27] ECF # 7 at 20-29.

[28] ECF # 8.  The traverse is 35 pages.

## Analysis

**A.    Standards of review**

***1.    Standard of review – Fourth Amendment claims of illegal search and seizure***

The Supreme Court established in *Stone v. Powell* that "where the State has provided an opportunity for a full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the grounds that evidence obtained in an unconstitutional search or seizure was introduced at trial."[29] The Sixth Circuit has held that to determine whether a petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in state court pursuant to *Stone*, a federal habeas court must (1) establish whether the State has provided a procedural mechanism which, in the abstract, presents the opportunity to raise a fourth amendment claim; and (2) then decide whether the petitioner's presentation of his claim was in fact frustrated because of a failure of that mechanism.[30]

In addition, it must be noted that although the rule in *Stone* pre-dates the passage of the AEDPA, it continues to govern treatment of Fourth Amendment claims in federal habeas proceedings.[31]

---

[29] *Stone*, 428 U.S. at 494.

[30] *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (citing *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)).

[31] *Bressler v. Timmerman-Cooper*, No. 3:06-cv-2683, 2008 WL 313605, at *8 (N.D. Ohio, Feb. 4, 2008).

**2.      *Standard of review – manifest weight of the evidence***

In the first instance, to the extent a federal habeas claim rests on the assertion that the petitioner's conviction was obtained by a verdict against the manifest weight of the evidence, that claim is predicated on a violation of state law and so does not state a cognizable claim for federal habeas relief.[32]

Specifically, a manifest weight of the evidence claim in Ohio requires the reviewing court to act as the "thirteenth juror," reviewing the entire record, weighing the evidence, and considering the credibility of witnesses, in order to determine if the jury at trial "lost its way."[33]  As such, adjudicating this claim would require the federal habeas court to perform tasks – such as re-weighing evidence and assessing the credibility of witnesses – for which it expressly has no authority.[34]

**3.      *Standard of review – waiver and fair presentment***

Ordinarily, a petitioner must first exhaust his available state remedies before seeking federal habeas relief by fairly presenting his claims to the highest court in the state where he was convicted.[35]  However, if a claim was not first fairly presented to the state court as a federal constitutional violation, and there are now no state remedies available to the

---

[32] *See*, *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  "A federal court may not issue the writ on the basis of a perceived error of state law."

[33] *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 678 N.E.2d 541, 546-47 (1997) (citations omitted).

[34] *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).

[35] *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

petitioner to present that claim, the claim must be considered exhausted, but will be deemed procedurally defaulted or waived by the federal court.[36]  As such, a procedurally defaulted or waived claim can only be considered by the federal habeas court upon a showing of cause and prejudice to excuse the waiver or of actual innocence.[37]

To establish "cause" in this context, a petitioner must show that some objective factor, something external to him that fairly cannot be attributable to him, precluded him from fairly presenting his claim while state remedies were available.[38]  If cause is to be attributed to ineffective assistance of counsel, that claim of ineffective assistance itself must have been first presented to and exhausted in state court.[39] Demonstrating "prejudice" requires showing that the complained-of constitutional error worked to the petitioner's actual and substantive disadvantage, infecting his entire trial with error of constitutional dimension.[40]  There can be no prejudice, however, where the petitioner cannot show a reasonable probability of a different result at trial.[41]  Actual innocence requires new, reliable evidence, not available at trial, that makes it more likely than not that no reasonable juror would have found the

---

[36] *See*, *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004) (citation omitted).

[37] *Id*.

[38] *See*, *Coleman v.Thompson*, 501 U.S. 722, 753 (1991).

[39] *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).

[40] *United States v. Frady*, 456 U.S. 152, 170 (1982).

[41] *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003).

petitioner guilty beyond a reasonable doubt.[42]   Actual innocence here means "factual innocence, not mere legal insufficiency."[43]

To determine if the petitioner failed to fairly present his claim to the state court as a federal matter, the Sixth Circuit teaches that the habeas court should consider whether the petitioner in presenting his claim (1) relied on federal cases employing constitutional analysis; (2) relied on state cases using federal constitutional analysis; (3) phrased the claim in terms of federal constitutional analysis or in terms sufficiently particular to allege a violation of a specific constitutional right; or (4) alleged facts within the mainstream of constitutional law.[44]

In this regard, general allegations of the denial of a "fair trial" or "due process" do not fairly present a claim of violation of a specific federal constitutional right.[45]  Similarly, it is not enough that the facts necessary to support a federal claim were presented to the state court or that a similar state law claim was made.[46]  Essentially, the petitioner must present the same claim under the same theory to the state court as is now presented to the federal habeas court.[47]

---

[42] *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

[43] *Bousley v. United States*, 523 U.S. 614, 623 (1998).

[44] *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

[45] *Id*.

[46] *Anderson v. Harless*, 459 U.S. 4, 6 (1982).

[47] *Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987).

**4.      *Standard of review – unreasonable application of clearly established federal law***

As prescribed by federal statute, in cases where the state court has previously adjudicated a habeas claim on the merits after first correctly identifying the applicable federal law, the federal court may not issue the writ unless that state court decision involved an unreasonable application of clearly established federal law.[48]  Under this clause, if the state court identified the correct governing legal principle applicable to the petitioner's case from the decisions of the Supreme Court, the writ will not issue unless the state court unreasonably applied that holding to the facts of the petitioner's case.[49]  The proper inquiry under this provision is whether the state court decision was objectively unreasonable and not merely erroneous or incorrect.[50]

**5.      *Standard of review – sufficiency of the evidence***

Because the Due Process Clause of the Constitution does not permit a state to convict a person of a crime without proving all the elements of the offense beyond a reasonable doubt,[51] a claim that insufficient evidence supported a conviction initially involves an examination of state law to determine the elements of the crime the state was required to

---

[48] 28 U.S.C.§ 2254(d)(1).

[49] *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

[50] *Id.* at 409-11.

[51] *Fiore v. White*, 531 U.S. 225, 228-29 (2001).

prove, followed by a federal question of whether those elements were proved at trial in compliance with due process.[52]

Under clearly established federal law, sufficient evidence will be found if, after viewing all the evidence, and the reasonable inferences to be drawn from that evidence, in the light most favorable to the prosecution, the federal habeas court can conclude that any rational trier of fact could have found each element of the crime proven beyond a reasonable doubt.[53]  This standard of review does not permit the federal habeas court to make its own subjective determination of guilt but gives full play to the state court trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[54]

In particular, in considering a claim of insufficient evidence, an attack on the credibility of a witness is understood to be simply a challenge to the quality or weight of the prosecution's evidence and so is not a cognizable challenge to the sufficiency of the evidence.[55]

---

[52] *Ducic v. Moore*, 1:07-cv-1234, 2008 WL 2783492, at *6 (N.D. Ohio, July 17, 2008) (citation omitted).

[53] *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).

[54] *Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).

[55] *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002).

-12-

**6.     Standard of review – fairly presented federal claims for relief not adjudicated by state court**

The standard of review outlined by 28 U.S.C. § 2254(d) applies by its own terms only to habeas claims that were "adjudicated on the merits in State court proceedings."[56]  When a federal habeas claim was fairly presented to but not adjudicated on the merits by the state courts, the federal habeas court must evaluate that claim under the pre-AEDPA standard, reviewing *do novo* questions of law and mixed questions of law and fact.[57]

**7.     Standard of review – ineffective assistance of appellate counsel**

Under *Strickland v. Washington*,[58] a petitioner establishes ineffective assistance of counsel by showing first that counsel's performance was deficient and then that this deficient performance prejudiced the petitioner by rendering the proceeding unfair and the result unreliable.[59]  Although *Strickland* involved the ineffective assistance of trial counsel, a comparable test applies to claims of ineffective assistance of appellate counsel.[60]  In either instance, both prongs of the *Strickland* test must be met in order for the writ to be granted;

---

[56] 28 U.S.C. § 2254(d); *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).

[57] *Maples*, 340 F.3d at 436; *Jones v. Bradshaw*, 489 F. Supp. 2d 786, 803 (N.D. Ohio 2007).  In circumstances not applicable here, federal courts employ a modified version of AEDPA deference to the state court decision in cases where the state court did not squarely address the petitioner's claim as a federal Constitutional claim, but its analysis nevertheless bears "some similarity" to the requisite analysis set forth in clearly established federal law. *Filiaggi v. Bagley*, 445 F.3d 851, 854 (6th Cir. 2006).

[58] *Strickland v. Washington*, 466 U.S. 668 (1984).

[59] *Id*. at 687.

[60] *Bowen v. Foltz*, 763 F.2d 191, 194 (6th Cir. 1985).

-13-

thus, courts need not address the issue of competence if the claim can be disposed of for failure to show prejudice.[61]

In reviewing counsel's performance, the court recognizes that counsel is presumed to have rendered adequate assistance.[62]  The reviewing court must not engage in hindsight but should evaluate counsel's performance within the context of the circumstances existing at the time of the alleged errors.[63]

The key is not whether counsel's choices were strategic but whether they were reasonable.[64]  To that end, counsel has a duty to make reasonable investigation into possible alternatives but, having done so, will be presumed to have made a reasonable decision in choosing.[65]

In the context of appeal, an appellate attorney need not raise every possible issue on appeal to be effective.[66]  Effective appellate advocacy often requires that the attorney select only the most promising issues for review.[67]  In addition, there can be no ineffectiveness in failing to argue a non-meritorious issue.[68]

---

[61] *Strickland*, 466 U.S. at 697.

[62] *Id*. at 690.

[63] *Id*.

[64] *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).

[65] *Strickland*, 466 U.S. at 691.

[66] *Jones v. Barnes*, 463 U.S. 745, 752 (1983).

[67] *Id.*

[68] *Strickland*, 466 at 698.

-14-

With respect to the prejudice prong, the petitioner must show that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.[69] A reasonable probability is a probability sufficient to undermine confidence in the outcome.[70]

## B.    Application of standards

### 1.    *The Fourth Amendment claim in ground one is non-cognizable.*

As noted, a federal habeas court may adjudicate a Fourth Amendment claim only under very limited circumstances. Essentially, such a claim merits habeas review only where state law provides no mechanism for addressing such claims or where an existing state mechanism for reviewing such claims failed.

Initially, I note that Ohio, in its pretrial motion to suppress,[71] and in direct appeal from a denial of that motion,[72] does have a procedural means for addressing Fourth Amendment claims asserted by criminal defendants. Further, I also note that Rampey has presented no basis for claiming that this process failed to operate in his case. Indeed, the record here explicitly shows that Rampey's pretrial motion to suppress and his appeal from the denial of that motion were considered and adjudicated in the Ohio courts.

---

[69] *Id.* at 694.

[70] *Id.*

[71] *See*, Rule 12, Ohio Rules of Criminal Procedure.

[72] *See*, Rules 3 and 5, Ohio Rules of Appellate Procedure.

Accordingly, since Ohio provided Rampey with the procedural mechanism for addressing his Fourth Amendment claim, and that mechanism operated properly in Rampey's case, under the rubric of *Stone*, Rampey may not relitigate his claim in this Court. I recommend that ground one be dismissed as non-cognizable.

**2.     *The manifest weight of the evidence claim in ground two is non-cognizable.***

Rampey's second ground for relief asserts, in part, that his conviction was against the manifest weight of the evidence. Adjudicating that component of ground two, as noted earlier, would require this Court to assume the role of the "thirteenth juror" so as to reweigh the evidence, resolve conflicts in testimony, and make its own subjective determination of guilt or innocence. Those functions are expressly not permitted to a federal habeas court.

Therefore, I recommend that the manifest weight of the evidence component of ground two be dismissed as non-cognizable.

**3.     *The state appeals court did not unreasonably apply clearly established federal law concerning sufficiency of the evidence in denying Rampey's claim in that regard, and so this element of ground two should be denied.***

Rampey's second element of ground two – that his conviction was not supported by sufficient evidence – was reviewed by the state appeals court under the standard of *State v. Jenks*,[73] an Ohio Supreme Court decision that explicitly adopts *Jackson v. Virginia* into Ohio law.[74] Accordingly, I note first that the state court employed the correct standard of review, since *Jenks* states clearly established federal law as to the sufficiency of the evidence.

---

[73] *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492 (1991).

[74] *Id*. at ¶ 2 of the syllabus.

-16-

Next, I note that the state court opinion extensively and thoroughly outlined Ohio law as to what constitutes "knowing" "possession," as those terms are used in the statute Rampey was accused of violating, and then reviewed in detail the State's evidence at trial to support Rampey's conviction.  First, the State presented evidence from the detective who worked closely with the informant in this case that established the informant's information had proven reliable and "very accurate" over seven to eight months prior to Rampey's case.[75] Further, that same detective described the informant's information concerning Rampey and the drug buy that was set up on tape – information that was specific as to the amount of cocaine involved; the pickup location; the type, color, and license number of Rampey's truck; and the fact that the cocaine would be wrapped in a particular way and stored in the center console of Rampey's truck.[76]

This information was confirmed in court by the testimony of the informant himself, who also testified to having previously purchased drugs from Rampey.[77]  Moreover, the informant testified that he recognized Rampey's voice when the phone call was made arranging the buy, and he told the jury the tape of the call was accurate.[78]  The informant also

---

[75] ECF # 7 at 86-87.

[76] *Id*. at 87.

[77] *Id*.

[78] *Id.* at 87-88.

specifically testified that he was not in Rampey's truck the night before and had never placed drugs in the truck.[79]

Finally, the appeals court noted that the jury heard testimony from two Canton police officers who arrested Rampey and testified that the drugs were found in Rampey's truck exactly where the informant said they would be, wrapped in the knotted white napkins as described by the informant.[80]

From all of this, the court concluded, when viewed in the light most favorable to the State, that the evidence was "clearly sufficient to prove that Rampey knowingly possessed the cocaine ..., [that] Rampey had previously sold cocaine to [the informant] at the VFW, [that] he had arranged to sell more cocaine to [the informant] that night, [that] the cocaine was found in plain sight in his truck after he was arrested getting out of his truck, and [that] the cocaine was packaged in a manner typical in the illegal drug industry."[81]

Rampey's argument here is essentially an attack on the credibility of the informant, rearguing his assertion that the drugs were planted in his truck by the informant.[82]  However, as noted above, disputing the credibility of a witness is not cognizable as a challenge to the sufficiency of the evidence but, rather, merely contests the quality or weight of the witness's

_____

[79] *Id.* at 88.

[80] *Id.* at 88-89.

[81] *Id*. at 89.

[82] ECF # 8 at 19.  "The 'confidential informant' ('who led officers to the petitioner') was less than credible, had access to the vehicle the night before, was familiar with the drug trade and had sufficient motive to set the petitioner up as a drug dealer...."

testimony.  So understood, it cannot be the basis for a federal habeas court granting the writ on a claim of insufficient evidence.

Accordingly, I recommend denying that portion of ground two that raises the issue of insufficient evidence, inasmuch as the opinion of the state appeals court in this regard was not an unreasonable application of clearly established federal law.

**4.**     ***Ground three – challenging the admission of the tape recorded conversation between Rampey and the informant – should be dismissed, since Rampey waived it by not fairly presenting it to the state courts.***

Rampey presented this ground in the state courts as exclusively one arising under Ohio's Rules of Evidence.[83]  Specifically, he argued that a proper foundation for admitting the tape was not established since the police officer with custody of the tape couldn't independently authenticate Rampey's voice, and the informant's identification of Rampey was "highly questionable considering his interest in the outcome of this case."[84]  The Ohio appeals court affirmed the trial court's decision to admit the tape solely as a matter of Ohio law, noting that the informant "testified that he had known Rampey for eight years, had spoken to him on the phone before, and recognized Rampey's voice."[85]  With such testimony as a foundation, the appeals court found that the trial court had not abused its discretion in admitting the tape.[86]

---

[83] *See*, ECF # 7 at 40-41.

[84] *Id.* at 40.

[85] *Id.* at 84.

[86] *Id.*

A review of Rampey's arguments to the state court, and the Ohio appeals court's grounds for its decision, establishes that this claim was presented and decided solely as a matter of Ohio evidentiary law. As stated earlier, in order for a claim to be "fairly presented" to the state courts, the same claim under the same theory must be before this Court as was before the state courts, and that claim must be stated in terms of federal constitutional law.

Although Rampey now contends that this claim was presented and decided under a "plain error" standard,[87] and so should be considered "fairly presented" as a federal constitutional claim to the Ohio courts, this assertion has no merit. The State raised the plain error standard on appeal as the only possible way Rampey could receive appellate review of the decision to admit the tapes since he had waived appeal of that decision by not objecting to the admission of the tapes at trial.[88] Notwithstanding the reference to plain error, the State then continued its appeals brief by stating, "Rampey's claim is raised under [Ohio] Evidence Rule 901...."[89]

As this analysis makes clear, Rampey raised his claim solely as a matter of state law, a fact not altered by the State's citation to an alternative analysis based on another portion of Ohio law.[90] In either case, the matter would be before the Ohio appeals court as one of state law, not as a federal constitutional claim.

---

[87] ECF # 8 at 23, citing ECF # 7 at 71.

[88] *See*, ECF # 7 at 70.

[89] *Id*. at 71.

[90] Ohio Crim. R. 52(B) as different from Rampey's use of Ohio R. Evid. 901.

Thus, I recommend finding that Rampey did not fairly present this claim to the Ohio courts as a federal constitutional claim under the applicable tests and so should be deemed to have waived it before this Court.

I also recommend finding that Rampey has not excused his waiver by showing cause for not presenting this claim as a federal claim to the state court, nor has he established prejudice from this Court not reaching the merits here.  With respect to cause, Rampey has not attempted to show that any cause outside himself prevented him from raising this claim as a federal constitutional one while state remedies were available.  Nor has he attempted to show that, without the evidence of the tape before the jury, the result at trial would have been different.  Indeed, it is hard to credit such a notion, since the contents of the tape were substantially testified to by the informant himself.

In sum, I recommend dismissing ground three as waived since it was not fairly presented in state court as a federal constitutional claim.

### 5.     *Rampey's claim of ineffective assistance of appellate counsel in ground four should be denied as without merit.*

Rampey here asserts that his appellate counsel was ineffective for failing to raise four arguments on appeal. He asserted this claim to the Ohio Supreme Court on direct appeal, but the Court declined jurisdiction, thus never addressing the merits of this claim.  Because Rampey did raise the claim at the appropriate time and took it to the highest court in Ohio, he must be considered to have exhausted the claim.  But because the Supreme Court of Ohio did not adjudicate the claim, it must be considered here *de novo*, since there is no state court decision on the merits to review or to which the federal court must give deference.

-21-

Rampey essentially claims that his appellate counsel was ineffective for:

1.      not challenging his non-minimum sentence pursuant to *Blakely*;

2.      not challenging the trial court's imposition of a fine in light of Rampey's alleged status as an indigent;

3.      not raising the issue that the State knowingly used false testimony when it called the informant as a witness; and

4.      for not arguing that Rampey was subjected to malicious prosecution, since the intent of this trial was allegedly only to pressure Rampey into being an informant.[91]

The State responds that:

1.      Rampey can show no prejudice from failing to argue his purported *Blakely* violation, since, were a remand to be ordered, the trial judge could impose the exact same sentence, but without making any findings of fact;[92]

2.      the appellate attorney had no basis for arguing that a fine was impermissible in this case due to indigency since Rampey did not file any affidavit of indigency prior to sentencing as required by law;[93]

3.      the appellate attorney likewise had no basis in the record for establishing that the informant's testimony was known to be false by the State, nor that he was prejudiced by its use, since his attorney had ample opportunity to cross-examine the informant at trial to present any attacks on credibility to the jury;[94] and,

---

[91] *See*, ECF # 1, Attachment at 15.

[92] ECF # 7 at 22-27.

[93] *Id*. at 27-28.

[94] *Id*. at 28-29.

4.      there was no basis for claiming malicious prosecution on appeal – a claim that is fundamentally undercut by the fact of Rampey's conviction.[95]

In reviewing these arguments in light of Rampey's traverse, I will make four observations:

First, I note that Rampey's claim that a *Blakely* violation occurred during his sentencing is asserted here as part of an ineffective assistance of counsel claim, not as a ground for relief in itself.  In essence, Rampey is now arguing that his appellate counsel was ineffective for not raising the *Blakely* argument on appeal.  As such, it is important to begin addressing this claim by viewing it through the lens of ineffective assistance analysis and not start this Court's consideration by jumping to *Blakely*.

Reviewing Rampey's claim in this light, I note first that Rampey did not raise the *Blakely* issue at trial, since *Blakely* had yet to be decided when Rampey was sentenced.[96] Indeed, Rampey's claim, first raised on his *pro se* appeal to the Ohio Supreme Court, was actually not directly based on *Blakely*, but on *State v. Foster*[97] – the Ohio case applying *Blakely* to Ohio's sentencing structure that was decided almost two years after Rampey was sentenced and more than one year after his appellate counsel filed the assignments of error.[98]

---

[95] *Id.* at 29.

[96] *Blakely* was decided June 24, 2004 (*Blakley*, 542 U.S. at 296) and Rampey was sentenced February 27, 2004, or some four months before (ECF # 7 at 13).

[97] *State v. Foster*, 109 Ohio St. 3d 1, 845 N.E.2d 470 (2006).  *See*, ECF # 7 at 107.

[98] As noted, Rampey was sentenced February 27, 2004 (*id*. at 13); the assignments of error were filed on January 14, 2005 (*id.* at 20), and *Foster* was decided on February 26, 2006 (*Foster*, 109 Ohio St. 3d at 1).

Thus, stated differently in light of this chronology, Rampey's ineffective assistance claim is that his appellate counsel was constitutionally ineffective in January, 2005 for not arguing a claim based on a case that would not be decided until February, 2006. Clearly established federal law on effective assistance has never required counsel to "have the prescience to foretell" future developments in the law in order to be judged constitutionally effective advocates.[99]

Moreover, and more importantly, Rampey fares no better if his ineffective assistance claim is read as one asserting that his state appellate counsel should have challenged his sentence on appeal based solely on *Blakely*. Although, unlike the situation with *Foster*, Rampey's assignments of error were filed after the Supreme Court had decided *Blakely*,[100] the fact that Rampey did not receive the maximum possible sentence for his convictions[101] meant that he was at risk for a harsher sentence if his attorney had raised a *Blakely* claim and been successful, mandating a re-sentencing. In this sense, Rampey's appellate attorney could

---

[99] *Green v. United State*, 65 F.3d 546, 551 (6th Cir.1995).

[100] The State erroneously states that the assignments of error were filed after *Blakely* was decided. *See*, ECF # 7 at 24, claiming the assignments of error were filed June 14, 2005. A review of the record discloses, however, that they were filed in January, not June. Although the time-stamp on the front of the filing is faded and could be misread as June, the proof of service at the end of that filing (ECF # 7, Attachment at 43) clearly shows it was filed in January.

[101] He received eight years in prison for his conviction on the first degree felony and 12 months for his conviction on the fourth degree felony (ECF # 7, Attachment at 15). The maximum sentences Rampey could have received under Ohio law are 10 years in prison for the first degree felony and 18 months for the fourth degree felony. *See*, Ohio Rev. Code § 2929.14(A)(1), as to the first degree felony, and Ohio Rev. Code § 2929.14(A)(4), as to the fourth degree felony.

-24-

be said to have made a strategic choice not to raise an issue on which he had very little hope

of success[102] and which was an issue that, if the appeal succeeded, could have subjected his

client to an increased sentence.[103]

     As noted, appellate advocates are allowed to make strategic choices as to what issues

offer the greatest likelihood of success.  Further, it is not sound strategy to raise an issue on

appeal with a limited chance of success, but which, if successful, has a very real possibility

that the appellant could end up worse off than before the appeal.[104]

     In connection with the effect of any possible future re-sentencing, I note that Rampey

argues in his traverse that only the sentencing scheme in effect at the time of his trial should

be used in any re-sentencing, since employing the standards set forth in *Foster* would be a

---

[102] In fact, as the State notes, the Ohio appellate court for this district was "part of the majority of Ohio's appellate courts which declined to apply *Blakely* to Ohio's sentencing scheme." ECF # 7 at 24.

[103] This situation is readily distinguished from the case in *Hill v. Sheets*, No. 2:07-cv-539, 2008 WL 4809336 (S.D. Ohio, Nov. 4, 2008).  In *Hill*, the district court concluded that the petitioner's appellate counsel was ineffective for not pursuing a *Blakely* claim on appeal, even though *Foster* had yet to be decided when the appeal was filed.  The Court found that because the petitioner there had already received the maximum sentence and so was at no risk of any increase to that sentence, there was no strategic reason for appellate counsel not to have pursued a *Blakely* claim, regardless of the fact that such a claim was not likely to have succeeded in the Ohio courts at that time.  *Hill*, 2008 WL 4809336 at *18.

[104] This risk of an increased sentence differs from the concept, expressed in *Minor v. Wilson*, 213 F. App'x 450, 453 n.1 (6th Cir. 2007), that an appeal in these circumstances would likely leave the appellant with the same sentence as before.  While, as a practical matter, a re-imposition of the same sentence may be the likely outcome, as *Hill* points out, the re-imposition of the same sentence presents no risk to the appellant, and so no basis for a strategic decision to forego even a long-shot appeal. The risk changes appreciably when, as here, a successful appellant would be subject to an increased penalty on re-sentencing.

constitutionally impermissible *ex post facto* application of *Foster*.[105]  Initially, this argument

is moot in the event that, as recommended, there is no ineffective assistance found, and so

no re-sentencing required.  However, it is also important to note that Rampey's argument has

previously been specifically considered and rejected by this Court.[106]

      For these reasons, I recommend finding that Rampey's appellate counsel was not

ineffective for not raising a *Blakely* claim in Rampey's direct appeal.

      Second, I recommend finding that, because Rampey cannot show that the argument

regarding indigency was a meritorious one for appeal, the failure to make it cannot be

ineffective assistance.  Rampey claims that his indigency was affirmed by every court that

examined the question and further that his appellate counsel personally had his affidavit of

indigency.[107]  However, as the State points out and Rampey does not dispute, no affidavit of

indigency was filed with the trial court prior to sentencing.[108]  Since appellate courts in Ohio

may not review any material outside of the record on appeal,[109] it would have been pointless

for Rampey's counsel to argue on appeal that the trial court erred by fining an indigent when

---

[105] *See*, ECF # 9 at 28.

[106] *Smith v.Moore*, 3:07-cv-1121, 2008 WL 3890009, at *2 (N.D. Ohio, Aug. 19, 2008), citing *Watkins v. Williams*, No. 3:07-cv-1296, 2008 WL 2484188, at **2-4 (N.D. Ohio, June 17, 2008).

[107] ECF # 8 at 33.

[108] *See*, ECF # 7 at 27.

[109] *Lamar v. Marbury*, 69 Ohio St. 2d 274, 278, 431 N.E.2d 1028, 1031 (1982).

that fact could only be proved by an affidavit outside of the record since there was no proof of indigency before the trial judge.

Thus, I recommend finding that there was no ineffective assistance in this circumstance because there was no meritorious basis for proceeding with this claim on appeal.

Third, I recommend finding that Rampey's contention that his appellate counsel was ineffective for not arguing that the State employed knowingly false testimony of the informant is also without merit.  There is nothing in the record to substantiate this argument save Rampey's own assertions.  Moreover, Rampey does not contest the State's position in his traverse.

Fourth and finally, I also recommend finding that Rampey's assertion that his appellate counsel should have raised an argument as to malicious prosecution is equally without merit.  The fact, as the State points out, that Rampey was convicted on the charges undercuts any argument that he was the victim of malicious prosecution.

In sum, I recommend finding, on the basis of a *de novo* review utilizing the *Strickland* standard for ineffective assistance of counsel as applied to appellate counsel, that Rampey's claims of ineffective assistance of appellate counsel be denied as without merit.

## Conclusion

For the foregoing reasons, I recommend that the petition of Darron Rampey for a writ of habeas corpus be denied in part and dismissed in part.

Dated:   December 22, 2008                    s/ William H. Baughman, Jr.
                                              United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[110]

---

[110] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).